# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

OSCAR C. THOMAS,

                Petitioner,

v.

CHRIS BUESGEN,

                Respondent.

Case No. 23-CV-581-JPS

**ORDER**

## 1. INTRODUCTION

On May 8, 2023, Petitioner Oscar C. Thomas ("Thomas" or "Petitioner"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 1, and later paid the filing fee, May 26, 2023 docket entry. The Court screened Petitioner's petition in March 2024 and set a briefing schedule for Petitioner's claims. ECF No. 7. Petitioner's claims are now fully briefed on the merits and is ripe for the Court's review. ECF Nos. 17, 21, 22. For the reasons stated herein, the Court will deny the petition and dismiss this case.

## 2. BACKGROUND

### 2.1 Procedural History

In 2007, Thomas was charged related to the death of his partner. *State v. Thomas*, 985 N.W.2d 87, ¶ 4 (Wis. 2023). Thomas was convicted in Kenosha County Circuit Court, but the Seventh Circuit Court of Appeals later granted federal habeas relief and Thomas received a new trial. *Id.*, ¶ 5 (citing *Thomas v. Clements*, 789 F.3d 760 (7th Cir. 2015)).

Thomas's case was retried to a jury in 2018. *Id.* He was convicted of all charges again and sentenced to life imprisonment. *Id.* Following sentencing, Thomas appealed, and the Wisconsin Court of Appeals affirmed the conviction and the circuit court's denial of his postconviction motions. *Id.*, ¶ 6 *(citing State v. Thomas*, 963 N.W.2d 887, ¶ 14 (Wis. Ct. App. 2021)). The Wisconsin Court of Appeals concluded that there was sufficient corroborating evidence of Thomas's sexual assault confession and that denial of the postconviction motion was appropriate. *Id.* It also concluded that the State's use of a report on DNA evidence caused a Confrontation Clause violation but that the error was harmless. *Id.* (citing *Thomas*, 963 N.W.2d, ¶¶ 35, 37).

Thomas petitioned for review to the Wisconsin Supreme Court. *See generally id.* On February 21, 2023, the Wisconsin Supreme Court affirmed the conviction. *Id.*

Now, Thomas seeks habeas relief on the following three grounds: (1) the corroboration rule of evidence was violated; (2) his Confrontation Clause rights were violated; and (3) his right to a fair and impartial jury was violated. ECF No. 1 at 8–10. Because the Court finds that Thomas abandoned his first and third grounds, *see infra* Sections 4.1 and 4.3, it will provide only the factual background for Thomas's Confrontation Clause ground below.

### 2.2 Factual Background

In December 2006, police officers found Joyce Oliver-Thomas ("Oliver-Thomas") unresponsive on the floor of her apartment. ECF No. 11-7, ¶ 4. She was later pronounced dead, and an autopsy concluded that she died from strangulation due to physical assault. *Id.* Thomas, Joyce Oliver-Thomas's partner, was subsequently charged with first-degree intentional

Page 2 of 15
Case 2:23-cv-00581-JPS   Filed 08/19/25   Page 2 of 15   Document 23

homicide, first-degree sexual assault, and false imprisonment. *Id.* As explained *infra* Section 2.1, Thomas was first tried in 2007 and convicted on all counts but later received a new trial. *Id.*, ¶ 5. The current grounds on which Thomas seeks habeas relief stem from his second trial, where he was again convicted of all charges. *Id.*

Thomas provided two statements to police that are relevant to this Order. *Id.*, ¶ 4. In his second statement, Thomas stated that

> he and a friend were smoking crack in the apartment building's basement. Thomas repeatedly returned to the apartment. On one trip to the apartment, Thomas noticed . . . Oliver-Thomas was lying down because "her chest was hurting." On a subsequent trip upstairs, . . . Oliver-Thomas said "she was feeling better." Thomas began watching a pornographic video and approached his wife to initiate sex. Even though she initially told him to stop, Thomas persisted, and, according to Thomas, the pair engaged in consensual sex, during which they fell to the floor. While engaged in sex, Thomas stated he had his left arm up around his wife's neck.
>
> After . . . Oliver-Thomas returned to the bed, Thomas said he began "humping" . . . Oliver-Thomas's hip area. Thomas and . . . Oliver-Thomas again fell to the floor, where Thomas had his left arm around . . . Oliver-Thomas's neck a second time. Thomas stated: "I didn't think I was squeezing hard, but [Oliver-Thomas] was struggling and was yelling for me to stop and to quit it. [Oliver-Thomas's] feet were kicking the floor while she was telling me to stop. [Oliver-Thomas] was telling me she loved me and for me to quit playing. I kept squeezing for a little while . . . [Oliver-Thomas's] breathing started to slow down, so I turned her loose. After I turned her loose, [Oliver-Thomas] was breathing funny and looking at me. I got up and left [the apartment]." When Thomas returned, he found . . . Oliver-Thomas laying face down on the floor. Thomas tried to lift her, but lost his grip twice. Each time, . . . Oliver-Thomas's face hit the bed or the floor. Thomas

called 911, and the dispatcher instructed Thomas to begin CPR, which he performed until officers arrived.

*Id.*, ¶¶ 14–15.

At his second trial, the State twice utilized a Wisconsin crime lab report (the "Report") that analyzed Oliver-Thomas's fingernails and found Thomas's DNA present there; it also found Oliver-Thomas's DNA present under Thomas's fingernails. ECF No. 11-11 at 88–89. First, the State asked Thomas's sole witness, a medical examiner who testified that Oliver-Thomas's death could have been an accident, about the findings of the Report. ECF No. 11-7, ¶ 28. Thomas's expert stated that it was unsurprising that Thomas's DNA was found under Oliver-Thomas's fingernails because they were a cohabitating couple. *Id.* Second, the State referenced the Report's findings—namely, the DNA evidence—in its closing argument, stating that there was "evidence" to support the State's theory, including Oliver-Thomas's DNA found under Thomas's fingernails. *Id.*, ¶ 45.

3.  **LEGAL STANDARD**

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner in custody pursuant to a state-court judgment of conviction is entitled to federal habeas relief only if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). With respect to claims adjudicated on the merits in state court, a federal court can grant an application for a writ of habeas corpus "only if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was based on an unreasonable determination of the facts in light of the evidence

presented in state court."[1] *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010) (citing 28 U.S.C. § 2254(d)). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000) and *Early v. Packer*, 537 U.S. 3, 8 (2002)). A state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.* (citing *Williams*, 529 U.S. at 405 and *Woodford*, 537 U.S. at 24–25); *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013). A state-court decision is based on an unreasonable determination of the facts "when it 'rests upon fact-finding that ignores the clear and convincing weight of the evidence.'" *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)).

---

[1] Thomas asks the Court to, instead, apply a "de novo review of" all his claims. ECF No. 17 at 1. "[D]e novo review is [only] appropriate if the federal habeas court finds that the state court did not address the merits of a claim (or one prong of a claim . . . )." *Kaprelian v. Tegels*, No. 14-C-618, 2017 WL 6514677, at *9 (E.D. Wis. Dec. 20, 2017) (citing *Benson v. Douma*, 626 F. App'x 171, 174–75 (7th Cir. 2015) and *Thomas v. Clements*, 789 F.3d 760, 766–67 (7th Cir. 2015)). Because the state court did address the merits of the claims that Petitioner raised, the Court will decline to perform a de novo review of Thomas's claims.

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'" (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014))).

Indeed, the habeas petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford*, 537 U.S. at 24; *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigating of claims already rejected in state proceedings." *Id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

A federal court may also grant habeas relief on the alternative ground that the state court's adjudication of a constitutional claim was based upon an unreasonable determination of the facts in light of the

evidence presented. 28 U.S.C. § 2254(d)(2). The underlying state court findings of fact and credibility determinations are, however, presumed correct. *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013) (citation omitted). The petitioner overcomes that presumption only if he proves by clear and convincing evidence that those findings are wrong. 28 U.S.C. § 2254(e)(1); *Campbell*, 770 F.3d at 546 (citing *Newman*, 726 F.3d at 928). "A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey v. Lemke*, 735 F.3d 945, 949–50 (7th Cir. 2013) (quoting *Goudy*, 604 F.3d at 399–400). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). If shown, an unreasonable factual determination by the state court means that this Court must review the claim in question de novo. *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008) (citing *Conner v. McBride*, 375 F.3d 643, 655 n.5 (7th Cir. 2004)).

**4.     ANALYSIS**

The Court concludes that Thomas is not entitled to relief on any of his claims in light of the demanding standard of review. The Court addresses each claim in turn.

**4.1     Corroboration**

While Thomas includes this claim in his habeas petition, ECF No. 1 at 8, in his brief he does not mention the claim, make any arguments in support of it, or cite any authority for why he believes he is entitled to relief, *see generally* ECF No. 17. Accordingly, the Court finds that Thomas has abandoned this claim and will discuss it no further. *C.f. Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) (deeming abandoned a claim

that was not delineated in a brief in opposition to summary judgment (collecting sources)).

The Court also notes that, even if Petitioner had argued this claim in his brief in support of his habeas petition, it remains an open question whether the corroboration rule is a question of federal law such that its violation can trigger habeas relief. *Johnson v. Acevedo*, 572 F.3d 398, 402 (7th Cir. 2009) ("A violation of state law is not the basis for federal collateral relief." (citing *Estelle v. McGuire*, 502 U.S. 62 (1991)); *Spivey v. Sternes*, 20 F. App'x 514, 516 (7th Cir. 2001) (discussing a circuit split on whether the corroboration rule is constitutionally mandated (citing *United States v. Dickerson*, 163 F.3d 639 (D.C. Cir. 1999); *Lucas v. Johnson*, 132 F.3d 1069, 1078 (5th Cir. 1998); and *Aschmeller v. South Dakota*, 534 F.2d 830, 831 (8th Cir. 1976))). However, because Thomas forfeited any such argument by failing to include it in his brief in support of his habeas petition, the Court will not consider this issue and will discuss this claim no further.

### 4.2 Confrontation Clause

Thomas also claims that his Confrontation Clause rights were violated. ECF No. 1 at 9. To succeed on this claim, Thomas must demonstrate that the Wisconsin Supreme Court's harmless error analysis with respect to this claim was objectively unreasonable. A constitutional error is harmless when "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Neder v. United States*, 527 U.S. 1, 15 (1999) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967) and citing *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986)); *id.* at 15–16 ("An otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." (quoting

*Van Arsdall*, 475 U.S. at 681)). This is often referred to as the *Chapman* standard.

In the context of federal habeas corpus review, "[i]f the state court has conducted a harmless-error analysis, the federal court must decide whether that analysis was a reasonable application of the *Chapman* standard." *Acevedo*, 572 F.3d at 404. "If the answer is yes, then the federal case is over and no collateral relief issues." *Id.* If the answer is no, the Court then independently reviews the record and grants habeas relief only if it finds that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *Acevedo*, 572 F.3d at 404 (collecting cases).

Before summarizing the Wisconsin Supreme Court's decision on the Confrontation Clause issue, the Court notes that the parties disagree over which portion of the opinion constitutes the majority opinion addressing this issue. Thomas contends that the majority opinion on this issue is the one written by Justice Patience Drake Roggensack, ECF No. 22 at 2 (referring to ECF No. 11-7, ¶¶ 25–55), while Respondent argues that the majority opinion for the Confrontation Clause issue is that of Justice Rebecca Frank Dallet, ECF No. 21 at 19 (citing ECF No. 11-7, ¶¶ 57–70). Respondent is correct here. While Justice Roggensack delivered the majority opinion as to Thomas's corroboration claim, she explicitly notes that Justice Dallet's concurrence constitutes the majority opinion as to the Confrontation Clause claim. ECF No. 11-7, ¶ 2 ("Justice Dallet's concurrence is the decision of the court for the confrontation issue."); *id.*, ¶ 56, n.28 (noting that Justice Dallet's concurrence "is the decision of the court in regard to" the Confrontation Clause issue); *id.*, ¶ 57 (Justice Dallet's

concurrence, which states that "because this concurrence is joined by [three other justices], it represents the decision of the court with respect to the second issue raised in this case: Whether the State violated Thomas's rights under the Sixth Amendment's Confrontation Clause when it elicited testimony about DNA evidence contained in a Crime Lab report not in evidence without affording Thomas the opportunity to cross-examine the report's author.").

The Wisconsin Supreme Court majority concluded that "the State violated Thomas's Sixth Amendment rights" by offering "the DNA evidence described in the Crime Lab report for its truth at trial." ECF No. 11-7, ¶ 58. The Wisconsin Supreme Court also found, however, that the Confrontation Clause violation was harmless, and therefore that "Thomas's convictions should stand." *Id.*

The parties do not take issue with the finding that Thomas's Confrontation Clause rights were violated, so the Court will accept that finding for the purposes of this Order. They disagree about whether the error was ultimately harmless. In reaching the conclusion that the error was harmless, the Wisconsin Supreme Court referenced the *Chapman* standard and its progeny, noting that the relevant inquiry is "whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Id.*, ¶ 68 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)). The court found that it was "clear beyond a reasonable doubt that the admission of the DNA evidence did not contribute to the guilty verdict." *Id.*, ¶ 69. To support this finding, the Court explained that the State's case was strong even without the DNA evidence and that the testimony from Thomas's expert undercut the importance of the DNA evidence. *Id.*, ¶¶ 69–70.

Page 10 of 15
Case 2:23-cv-00581-JPS     Filed 08/19/25     Page 10 of 15     Document 23

Thomas makes several arguments to support his claim that the error was not harmless and he is therefore entitled to relief. First, Thomas argues that the Wisconsin Supreme Court applied the incorrect standard in determining whether the error was harmless, lowering it to a "sufficiency of [the] evidence standard." ECF No. 17 at 3–4. As Respondent points out, however, Thomas does not cite to the majority opinion but rather to Justice Roggensack's opinion, which is not the opinion of the court as to the Confrontation Clause issue. ECF No. 21 at 18–20 (citing ECF No. 17 at 3–4). The majority opinion, however, cites to and applies the correct standard—the *Chapman* standard. *See* ECF No. 11-7, ¶¶ 68–70. This argument is meritless.

Thomas also argues that the Wisconsin Supreme Court "declined to analyze the evidence at all" when engaging in its harmless error analysis. ECF No. 17 at 5. The court's opinion demonstrates that this is false.[2] The court grappled with the fact that the improperly utilized "DNA evidence was used as support for the State's theory that Thomas intended to kill the victim and . . . to rebut Thomas's theory that the death was accidental," and that the evidence was "somewhat useful" because it "bolstered the State's narrative that Thomas scratched the victim's face with his free hand while choking her to death." ECF No. 11-7, ¶ 69. The Wisconsin Supreme Court nevertheless found that "the [DNA] evidence wasn't necessary to support

---

[2]In making this argument, Thomas cites to *Andrus v. Texas*, 590 U.S. 806, 822 (2020). *Andrus*, however, does not involve a court's harmless-error analysis but rather the prejudice test when trial counsel's performance was found to be deficient. *Id.* at 821–22. Accordingly, *Andrus* provides little insight to Thomas's case.

the [State's] theory since [its] case was already strong without it." *Id.* This strong evidence included

> testimony from the medical examiner about injuries to the victim's face, neck, tongue, and lips, all of which were consistent with Thomas violently and intentionally strangling the victim. Additionally, the jury also heard from Thomas's neighbor, who awoke to a loud argument in the middle of the night and a woman screaming "[s]top, stop, I love you, I love you." She then heard a loud noise, furniture moving, and silence, [all of which corroborated Thomas version of events in his confession].

*Id.* Not only was the State's case strong even without the DNA evidence, the court concluded, but the significance of the DNA evidence itself was effectively "undercut" by Thomas's expert at trial. *Id.*, ¶ 70. When the prosecutor asked Thomas's expert about the DNA evidence, "he said [that] the presence of the DNA was unsurprising given that Thomas and the victim were a couple that lived together." *Id.* Contrary to Thomas's assertion, the Wisconsin Supreme Court did review the evidence against Thomas at his second trial, and it found that it was "clear beyond a reasonable doubt that the [Confrontation Clause] error did not contribute to the jury's guilty verdict." *Id.* Thomas points to nothing to support that this harmless-error analysis was an unreasonable application of the *Chapman* standard, and the Court does not find that it was. *Acevedo*, 572 F.3d at 404.

Lastly, Thomas requests that the Court "honor the res judicata effect of the Seventh Circuit[']s opinion" in his prior habeas case. ECF No. 17 at 6 (citing *Thomas*, 789 F.3d at 772). As Respondent notes, however, that opinion addressed a completely separate issue related to deficient trial counsel and granted Thomas a new trial on that basis. ECF No. 21 at 21.

Page 12 of 15
Case 2:23-cv-00581-JPS   Filed 08/19/25   Page 12 of 15   Document 23

Thomas received newly appointed trial counsel who then corrected the issue at his second trial, which is the trial at issue here. *Id.* The bases for habeas relief here are completely separate from those successfully litigated by Thomas in his first habeas petition. Thus, because there is no issue of fact or law that carries over from Thomas's first trial to his second nor from his first habeas petition to the instant one, the Seventh Circuit's opinion in *Thomas v. Clements* has no res judicata effect here. *See Cannon v. Armstrong Containers, Inc.*, 92 F.4th 688, 705–06 (7th Cir. 2024) (noting that res judicata "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)) (internal quotation marks omitted)).

As discussed above, the Court finds the Wisconsin Supreme Court's analysis to be a reasonable application of the *Chapman* standard and therefore Thomas is not entitled to any collateral relief based on his Confrontation Clause right being violated. *Acevedo*, 572 F.3d at 404.

### 4.3 Juror Bias

While Thomas includes this claim in his habeas petition, ECF No. 1 at 10, in his brief he does not mention the claim, make any arguments in support of it, or cite any authority for why he believes he is entitled to relief, *see generally* ECF No. 17. Accordingly, the Court finds that Thomas has abandoned this claim. Further, even if Thomas had not abandoned this claim, the Court notes that it is unexhausted because Thomas did not petition the Wisconsin Supreme Court to review this ground for relief. ECF No. 11-7 at 7, n.10; *Hicks v. Hepp*, 871 F.3d 513, 530 (7th Cir. 2017) (noting that exhaustion "includes presenting the claims to the state's highest court in a petition for discretionary review" (citing *O'Sullivan v. Boerckel*, 526 U.S.

838, 848 (1999))); ECF No. 7 at 4, n.1 (noting that it was unclear upon screening whether Thomas fully exhausted all three claims). Therefore, the Court will discuss Thomas's juror bias claim no further.

5. **CONCLUSION**

For the reasons stated herein, the Court finds that Thomas has abandoned his first and third grounds as stated in his habeas petition, ECF No. 1, and is thus entitled to no relief on those grounds. Further, Thomas has not shown that the Wisconsin Supreme Court's harmless-error analysis was an unreasonable application of the relevant law and is accordingly not entitled to relief for the State's Confrontation Clause violation. The Court accordingly must deny Thomas's petition and dismiss this case.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the [habeas] applicant." To obtain a certificate of appealability, Thomas must make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). For the reasons discussed above, no reasonable jurists could debate whether Thomas's claims have merit or were abandoned. The Court will, therefore, deny Thomas a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner Oscar C. Thomas's petition for a writ of habeas corpus, ECF No. 1, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner Oscar C. Thomas's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly

Dated at Milwaukee, Wisconsin, this 19th day of August, 2025.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.